Argued May 1, affirmed October 24, 1978

BOTTS, *Appellant,*
*v.*
HARTFORD ACCIDENT & INDEMNITY
COMPANY, *Respondent.*
(No. 7930, SC 25493)

585 P2d 657

Alex M. Byler, of Corey, Byler & Rew, Pendleton, argued the cause for appellant. With him on the briefs was William L. Reynolds, Enterprise.

Edwin J. Peterson, of Tooze, Kerr, Peterson, Marshall & Shenker, Portland, argued the cause and filed a brief for respondent

HOLMAN, J.

## HOLMAN, J.

Plaintiff Margaret Botts brought this action as beneficiary to recover death benefits under a group accident insurance policy issued by defendant. At the conclusion of plaintiff's case-in-chief, the trial court granted defendant's motion for judgment of involuntary non-suit and plaintiff appeals.

Decedent Melvin Botts died at age 51 after suffering a myocardial infarction. He was stricken while operating a grader for the State Highway Division on a crew working between Lostine and Wallowa in Wallowa County. Decedent was a novice grader operator, was anxious and eager to learn the job, and had been so working for approximately two weeks. His work entailed spreading heavy aggregate which was used as a base in the widening of shoulders of the highway. At the time of his attack he was working on a curve which, along with other complicating factors including mail boxes and a side road, made the grading job more difficult than usual. In addition, the work involved considerable effort, nervous tension and strain because of the complicated machinery and the necessity to keep a close lookout for trucks that were dumping their loads, for other workmen, and for traffic on the highway. Ninety per cent of the time a flagman was used; decedent's attack occurred at a time when there was no flagman. Four dump trucks were hauling aggregate, each truck taking approximately one hour to make a round trip. The foreman, who was an expert grader operator and who was teaching decedent, was operating one of the trucks. Shortly after the noon break he appeared with a load of rock where decedent was working and where the other trucks had bunched up, some of them having come in loaded during the noon break. One had just dumped its load which decedent was spreading while the balance of the trucks were waiting to unload. Such bunching of trucks ordinarily did not occur.

At that time decedent went to the foreman, saying he was in trouble and asking him if he would help him

get straightened out and show him what to do. The decedent was flushed and breathing hard. The foreman worked with him from 30 to 45 minutes during which time decedent continued to operate the grader. When the foreman left for another load, decedent was still flushed and breathing hard; when he returned, the grader was sitting partially on the road, all the rock had been spread, but no one was around. During the interim, decedent had been taken by a passing motorist to the hospital where he died shortly after his arrival. His doctor testified that decedent had died as the result of a myocardial infarction brought on by exertion as well as by mental strain.

Decedent was not known to have had any prior indication of heart trouble although he had complained to his wife the week before his death of his arms being tired and hurting him and had blamed it on the grader. His physician had examined him approximately once a year since 1964 and had never observed any symptoms of heart or circulatory disease. The physician also testified that he had administered a resting electrocardiogram to decedent approximately three months prior to his death and that the test results were normal.

The issue presented on this appeal is whether plaintiff's evidence was sufficient to raise a question for the jury as to whether decedent suffered "accidental bodily injury" within the meaning of the following clause from defendant's insurance policy:

> "The word 'injury' * * * means accidental bodily injury sustained by an Insured Person or a Covered Dependent while the policy is in force with respect to such person and which results directly and independently of all other causes in loss covered by the policy."

In disputes over the meaning of insurance policies, as in all contract litigation, the primary focus must be on the language of the policy. The parties join in expressing a belief that *Thompson v. Gen. Ins. Co. of America,* 226 Or 205, 359 P2d 1097 (1961), is in point

and is controlling here.[1] In *Thompson* the plaintiff suffered a heart attack while breaking a horse. He attempted to recover on a policy providing that covered employees suffering bodily injury or sickness "*caused by accident*" were entitled to benefits (emphasis added). This court affirmed a grant of judgment notwithstanding a plaintiff's verdict on the basis of the then already well established rule that, given a policy such as that involved in *Thompson,* the plaintiff must prove *the cause* of the injury to be accidental. Thus, an "accidental cause" provision was distinguished from "accidental injury" and *Thompson* was decided on that basis. If we were to continue to recognize such a difference, the policy here would be classified as an accidental injury policy and not an accidental cause policy like the one in *Thompson.*[2] In *Pope v. Benefit*

[1]Plaintiff contends that even under *Thompson v. Gen. Ins. Co. of America,* 226 Or 205, 359 P2d 1097 (1961), she has presented a case raising a jury question, but we take her primary argument to be that *Thompson* should be overruled.

[2]Our examination of the Oregon cases which express a "commitment" to the means-result distinction shows that almost without exception they involve policies or statutes containing language at least facially justifying such a distinction if it was valid. *See, e.g., Pope v. Benefit Trust Life Ins. Co.,* 261 Or 397, 399, 494 P2d 420 (1972) ("arising from accidental cause"); *Thompson v. Gen. Ins. Co. of America,* 226 Or 205, 207, 359 P2d 1097 (1961) ("caused by accident"); *Kehoe v. Ind. Accident Com.,* 214 Or 629, 632, 332 P2d 91 (1958) (worker's compensation statute) ("caused by violent or external means"); *Burrows v. State Ind. Acc. Com.,* 209 Or 352, 353, 306 P2d 395 (1957) (worker's compensation statute) ("caused by violent or external means"); *Buckles Exec. v. Continental Cas. Co.,* 197 Or 128, 134, 251 P2d 476, 252 P2d 184 (1953) ("effected solely through accidental means"); *Hutchison v. Aetna Life Insurance Co.,* 182 Or 639, 641, 189 P2d 586 (1948) ("through external, violent and accidental means"); *Chalfant v. Arens et al,* 167 Or 649, 650, 120 P2d 219 (1941) (worker's compensation statute) ("caused by violent or external means"); *Trevathan v. Mutual Life Ins. Co.,* 166 Or 515, 518, 113 P2d 621 (1941) ("effected solely through external, violent, and accidental means"); *Bertschinger v. N.Y. Life Ins. Co.,* 166 Or 307, 317, 111 P2d 1016 (1941) ("effected solely through external, violent and accidental cause"); *Demagalski v. State Ind. Acc. Comm.,* 151 Or 251, 257, 47 P2d 947 (1935) (worker's compensation statute) ("caused by violent or external means"); *Kendall v. Travelers' Protective Assn.,* 87 Or 179, 183, 169 P 751 (1918) ("through external, violent and accidental means"). *But see, Finley v. Prudential Ins. Co.,* 236 Or 235, 238, 388 P2d 21 (1963) ("resulting from accidental bodily injury") (accidental means found); *LaBarge v. United Ins. Co.,* 209 Or 282, 284, 303 P2d 498, 306 P2d 380

*Trust Life Ins. Co.,* 261 Or 397, 494 P2d 420 (1972), we noted that the practice of making a distinction between accidental injury or results and accidental causes or means has been the subject of increasing criticism. *Pope v. Benefit Trust Life Ins. Co., supra* at 399-400, *id.* at 409 (O'Connell, C. J., concurring). In *Pope,* it was not necessary to decide whether the distinction should be abolished because we determined that the record contained evidence sufficient to support the trial court's conclusion that the injury resulted from accidental causes. *Id.* at 401.

■ Questions relating to the continued vitality of the means-result distinction need not be resolved in the present case because, as noted, the policy we are construing does not contain an accidental means or cause requirement. However, as seen in the briefs in this case, the distinction keeps rising to the surface and creating unnecessary confusion; consequently, we shall lay the distinction to rest at this seemingly opportune time. We interpret insurance policies according to what we perceive to be the understanding of the ordinary purchaser of insurance. *Pope v. Benefit Trust Life Ins. Co., supra* at 400; *Finley v. Prudential Ins. Co.,* 236 Or 235, 245, 388 P2d 21 (1963); *Thompson v. Gen. Ins. Co. of America, supra* at 207. We have previously expressed doubts as to whether the ordinary purchaser would expect the concept of "accident" to have a different meaning depending upon whether the policy purports to require accidental means or accidental results. *Pope v. Benefit Trust Life Ins. Co., supra* at 399-400. We are convinced that no distinction would be expected. *Also see Pope v. Benefit Trust Life Ins. Co., supra* at 409 (O'Connell, C. J., concurring).

■ However, the abolishment of the above-discussed distinction does not end our inquiry, for it is still

(1957) ("resulting * * * from accidental bodily injuries"). We note that the worker's compensation statute under which several of the cited cases were decided was amended in 1957 to provide for recovery when only the result is accidental. Oregon Laws 1957, ch 718, § 1. *See also* ORS 656.005(8)(a).

necessary that we determine whether the death of decedent was "accidental." In making this determination, we are guided by the principle that it is the common understanding of the term which must be used and not its technical meanings. *Pope v. Benefit Trust Life Ins. Co., supra* at 400; *Finley v. Prudential Ins. Co., supra* at 245; *Thompson v. Gen. Ins. Co. of America, supra* at 207; 10 Couch on Insurance § 41.5 at 30 (2d ed R. Anderson 1962); 1A Appleman, Insurance Law and Practice § 391 at 19 (1965). The insurance company may, of course, insert in its policy any definition of "accident" it chooses but, in the absence of doing so, it must accept the common understanding of the term by the ordinary member of the purchasing public. There are probably not many words which have caused courts as much trouble as "accident" and "accidental." *See Kisle v. St. Paul Fire & Marine Ins.,* 262 Or 1, 5, 495 P2d 1198 (1972). They are not words which lend themselves to specific or exact meanings, *Finley v. Prudential Ins. Co., supra* at 245; W. Vance, Law of Insurance § 181 at 948 (3d ed B. Anderson 1951), yet, everyone thinks he knows an accident when he sees one. In our prior decisions we have endeavored, by emphasizing the foreseeability of the injury and the intent with which it was produced, to develop definitions which best effectuate the reasonable expectations of the insured.[3] The vulnerability of these definitions becomes apparent, however, as we visualize the circumstances which fall within these

---

[3] *See, e.g., Finley v. Prudential Ins. Co.,* 236 Or 235, 245, 388 P2d 21 (1963) (" 'Accident' denotes an incident or occurrence that happened by chance, without design and contrary to intention and expectation"); *Thompson v. Gen. Ins. Co. of America,* 226 Or 205, 215, 359 P2d 1097 (1961) (same); *Trevathan v. Mutual Life Ins. Co.,* 166 Or 515, 525, 113 P2d 621 (1941) ("[accidental] indicat[es] an event which takes place without one's foresight and expectation, and is not the natural and probable consequence of an ordinary or common act"). *See generally,* 10 Couch on Insurance § 41.6 at 27-28 (2d ed R. Anderson (1962); W. Vance, Law of Insurance § 181 at 948 (3d ed B. Anderson (1951). The cited definitions are sometimes used in cases finding a distinction between accidental means or cause and accidental results. Our reference should not be taken as approval of the distinction.

definitions but which we know were never contemplated by either the company or any insured as being within the coverage. If someone sits in a draft, catches pneumonia and dies, we would not say his death was accidental; neither would we so classify the death of a person who catches a communicable disease from someone seated next to him on a bus. However, these deaths and almost all deaths, except those which are self-inflicted and, perhaps, those brought on by extreme old age, occur by chance, without design, are contrary to expectation, and are neither foreseeable nor intended. Yet it is probable that these same deaths would never be considered "accidental" by anyone. In the instant case, had decedent died in bed while asleep, his death would have been no less unintended or unforeseeable.

The problem arises from an erroneous impression that there is one all-encompassing definition of "accident" or "accidental" without regard to the particular factual circumstance in which the meaning of the terms is brought into question. If someone is struck by lightning, his injury or death is usually spoken of as being the result of an unanticipated, external force or occurrence. If he walks across a field and steps in a hole, thereby breaking a leg, his injury is usually spoken of as being the unforeseeable and inadvertent result of his voluntary conduct. On the other hand, if one suffers a heart attack at work, it is asked whether the attack was the result of some unusual or abnormal conduct required of him in the performance of his job. The injury in each case may be described as accidental, but no single definition of that word adequately covers all three situations.

The everyday understanding of the word "accident," as it describes any one of the above factual situations, is not helpful when we deal with either of the other two. For example, if a heart attack results from events or activities which are the normal, expected ingredients of the victim's everyday life, the attack is not usually classified as accidental, even

though, like the broken leg mentioned above, it is brought about by voluntary conduct which results in unforeseen and unexpected injury or death. There are, undoubtedly, additional situations which require still further definitions to meet the normal understanding of what constitutes an accident. As previously indicated, the difficulty is in the tendency to think that there is one all-encompassing definition of "accident" which accommodates all circumstances. There is no such thing. Here we deal only with this type of on-the-job heart attack.

We see the issue in cases of on-the-job heart attacks which are covered by accident policies as being whether the job-related activity leading to a victim's heart attack was abnormal and unusual, taking into consideration the ordinary requirements of his job performance. We realize that we can be accused of substituting one abstraction for another and that "abnormal" and "unusual" are not much better than "accidental" except that they are used in relation to the ordinary requirements of the job. After all, recognizing that words are slippery things at best, we have nothing else with which to convey ideas. However, as long as the "reasonably prudent man" wanders in and out of the halls of justice, it is difficult to condemn the use of abstractions in deciding cases.

■ Whether the decision is for judge or jury follows the familiar pattern. In situations in which "accident" or "accidental" are not defined in the policy, it is for the court to decide the definition which is properly applicable to the particular factual situation, taking into consideration what we believe to be the popular non-technical understanding of the term. If the evidence discloses that no reasonable jury could find that a view of the facts most favorable to plaintiff is within the definition established by the court, a verdict should be directed by the court for the defendant. If the undisputed facts clearly come within the definition, a judgment should be directed for plaintiff. If the facts are disputed, or if varying legitimate inferences

can be drawn from established facts, the question is one for the jury.

■ It is our conclusion that the facts do not demonstrate a situation sufficiently abnormal or unusual to make a jury question on whether decedent suffered an accidental injury resulting in death as that term is understood by the ordinary purchaser of a policy. Plaintiff depends primarily upon the absence of a flagman and the pressure of all four trucks ready for unloading at the same time to justify submission of the case to the jury. The absence of a flagman was an expected part of the job even though most of the time there was a flagman present. The bunching of trucks awaiting to be unloaded, although testified by the foreman to be unusual, was the normal consequence of an inexperienced operator. The fact that trucks do not usually bunch up does not make it an unusual situation with an inexperienced operator. The pressure and tension of learning a difficult and exacting job while the work piles up is not abnormal or unusual. This is a normal, expected part of the learning process, and a heart attack that results therefrom is not an "accident."

It can be argued that, given the facts of the case, the word "accident" is ambiguous and inexact and that the policy should therefore be construed against the company. There is a demand for accident policies, and the universal difficulty in attempting to pin down an exact meaning for the common understanding of what constitutes an accident in varying circumstances is hardly an adequate reason for saying that all cases of unforeseen results, even when we are sure they do not comport with the common understanding of "accident," should be submitted to a jury.

The judgment of the trial court is affirmed.