Argued and submitted February 28, reversed and remanded June 18, reconsideration
denied August 1, petition for review denied October 7, 1986 (302 Or 86)

## SAFECO INSURANCE COMPANY OF AMERICA,
*Respondent,*

*v.*

## HOUSE et al,
*Defendants,*

## LEWIS,
*Appellant.*

### (A8302-00869; CA A34690)

721 P2d 862

Michael A. Greene, Portland, argued the cause for appellant. With him on the briefs was Rosenthal & Greene, P.C., Portland.

Larry A. Brisbee, Hillsboro, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Warden and Van Hoomissen, Judges.

WARDEN, J.

## WARDEN, J.

This is a declaratory judgment action by the plaintiff liability insurer against the personal representatives of the estates of Kenneth House, Cynthia Rogers and Robert Kropp. House, plaintiff's insured, shot and killed Rogers, Kropp and himself while he was intoxicated. Plaintiff sought a declaration that its policy does not cover the deaths of Rogers and Kropp. The jury found for and judgment was entered in favor of plaintiff. Rogers' personal representative (defendant) appeals. We reverse and remand.

Plaintiff's liability coverage applies, *inter alia,* to "an accident" resulting in "bodily injury," including death. The policy excludes coverage for "bodily injury * * * which is either expected or intended from the standpoint of the insured." There is no specific exclusion for bodily injury which is inflicted by the insured while intoxicated or which is attributable to his use of alcohol. The policy does not define "accident."

The general issues in the case are whether House's intoxication rendered him unable to act intentionally or purposefully at the time of the shootings and, if so, whether defendant may recover under plaintiff's policy. The case is complicated by the fact that the parties disagree about what the specific dispositive issue is. Plaintiff maintains that that issue is whether the shootings were "accidents" and within plaintiff's coverage. If the answer to that question is no, according to plaintiff, the exclusion for expected or intended bodily injury does not become a factor in the decision of the case. Defendant takes the position that there is an "inherent ambiguity in the policy concerning the interrelationship of the terms 'accident,' 'intended' and 'expected,'" and that the "logical interpretation of the policy language would be that an accident was defined as conduct which was not intentional or expected."

The way in which the trial court instructed and submitted the issue to the jury amounted to a hybrid of the parties' theories about what question was to be decided. The court first instructed:

"As to the terms 'accident,' 'expected' and 'intended,' in

the policy, if such terms are unambiguous, the terms must be given their plain and ordinary meaning.

"* * * * *

"In determining whether this case involves an accident or not, you should view the evidence from the point of view of the insured, Kenneth Lee House, to see whether or not it was expected or intended."

However, the court continued:

"The normal and foreseeable consequences of House's conduct may not be considered accidental because he was voluntarily intoxicated and could not foresee what might reasonably be expected from his conduct."

The court submitted a special verdict form to the jury, which posed three questions: first, whether the killing of Kropp and Rogers was an accident; second, whether House intended to injure Kropp and Rogers; and third, whether he expected to injure them. The form directed the jury that, if its answer to the first question was no, its verdict would be for plaintiff and it would not answer the other questions. The jury responded to the first question by finding that the killings were not accidents.

Defendant assigns error to the giving of the last of the quoted instructions and to the use of the special verdict form. He argues, in essence, that the combined effect of the instruction and the form was to require the jury to find against him on the question of whether the killings were accidents and to deprive him of the jury's consideration of whether the killings were intended or expected.

■ Plaintiff first contends that, even if the instruction was erroneous, the error was harmless, because the trial court should have granted plaintiff's motion for a directed verdict on the ground that "[t]he overwhelming weight of the evidence * * * establishes that, notwithstanding his voluntary intoxication, House was able to, and did, engage in clearly purposeful activity when he shot Kropp and Rogers." We disagree. There was evidence on which the contrary finding could be based.

Plaintiff next argues that the instruction was a correct statement of the law. The instruction was a paraphrase of the court's language in *Phillips v. Equitable Life Assurance Society of U.S.,* 370 F Supp 456, 458 (D Or 1973). There, the

intoxicated insured was shot by a person whose house he had invaded and whom he challenged to a fight. The issue was whether the insured died by "accidental means," thereby bringing his death within the insurance coverage. The two policies involved in *Phillips* contained exclusions, respectively, for death resulting when the insured was "committing or attempting to commit an assault or felony" and for death resulting from "any drugs, poison, gas or fumes." Notwithstanding those exclusions, the federal court considered it necessary to decide whether the insured's death was "accidental" within the meaning of the basic coverage provision. The reasoning by which it answered that question was that the insured's intoxication was voluntary, that the behavior which culminated in the insured's death was a reasonably foreseeable consequence of the voluntary intoxication and that the death itself was therefore not accidental. The definition of "accident" which the court applied was "an event happening without one's foresight or expectation." 370 F Supp at 458. However, the court charged the insured with foresight and expectation concerning the ultimate consequences of his intoxication rather than the consequences of the immediate conduct in which he engaged after becoming intoxicated.

The import of the decision in *Phillips* and the challenged instruction here is that *nothing* a voluntarily intoxicated insured does which is a consequence of the intoxication and which contributes to a putatively insurable event *can* be an "accident." That is not correct under Oregon law. In *Harbeintner v. Crown Life Insurance Co.,* 46 Or App 579, 612 P2d 334 (1980), the defendant insurer asserted that it was not responsible for the death of the insured resulting from his driving while intoxicated, because "the crash and his death 'were an imminent and foreseeable result of the insured's driving while intoxicated, and were not caused solely by external violent and accidental means.'" 46 Or App at 581. We rejected that argument and concluded that the crash of the car was "accidental," as the term is ordinarily understood, notwithstanding the driver's drunkenness. We also noted in *Harbeintner* that the policy, like the one here, did not have an intoxication exclusion.

Plaintiff seeks to distinqish *Harbeintner* by stating that

"the event giving rise to the insurance issue was unquestionably accidental in itself: the insured, driving his automobile with a blood alcohol level of .23, ran off the road and was killed. The driving of the automobile while drunk was deliberate; the wreck was not, despite the insured's condition of extreme involuntary [*sic*] intoxication.

"In the present case, as discussed above, there was overwhelming evidence that both the shootings and the injuries which resulted were intentional, notwithstanding House's condition of voluntary intoxication."

Plaintiff's distinction is unconvincing. It is true that an automobile crash is an "accident," as the word is commonly understood; aiming and shooting a gun may not fit as neatly within the pristine traditional understanding of an "accident." However, the actor's intoxication at the time of the event has no bearing on whether the basic nature of the event is susceptible to its being understood as an "accident." The relationship of the insured's intoxication to the injurious events in *Harbeintner* and here could be found as a fact to be precisely the same: the insured in *Harbeintner* became voluntarily intoxicated and, as a secondary consequence, died while driving a car in his stupor; the insured here became intoxicated and, as a secondary result, shot himself and two others. Plaintiff's differentiation between the "deliberateness" of the insured's driving and the "accidental" nature of the wreck in *Harbeintner* does not succeed as a legal proposition bearing on the correctness of the court's instruction, and it is irrelevant here if it is meant as a factual proposition. Under the *Phillips* rationale and the rationale of the challenged instruction, both the act of driving the automobile and the act of wrecking it would be normal and foreseeable consequences of the insured's voluntary intoxication.

■ We reject that rationale, and we conclude that the challenged instruction was erroneous insofar as it communicated that, as a matter of law, *no* consequences of conduct by a voluntarily intoxicated person *can* be accidental. That conclusion does not end the inquiry. The question remains whether, as a matter of law, the consequences of the *particular* conduct involved here *can* be accidental, thereby leaving it a jury question whether they were accidental in fact. The court said in *Botts v. Hartford Acc. & Indem. Co.,* 284 Or 95, 585 P2d 657 (1978):

"The insurance company may, of course, insert in its

policy any definition of 'accident' it chooses but, in the absence of doing so, it must accept the common understanding of the term by the ordinary member of the purchasing public. * * *

"* * * * *

"Whether the decision is for judge or jury follows the familiar pattern. In situations in which 'accident' or 'accidental' are not defined in the policy, it is for the court to decide the definition which is properly applicable to the particular factual situation, taking into consideration what we believe to be the popular non-technical understanding of the term. If the evidence discloses that no reasonable jury could find that a view of the facts most favorable to plaintiff is within the definition established by the court, a verdict should be directed by the court for the defendant. If the undisputed facts clearly come within the definition, a judgment should be directed for plaintiff. If the facts are disputed, or if varying legitimate inferences can be drawn from established facts, the question is one for the jury." 284 Or at 101.

Here, plaintiff did not define "accident" in its policy. The issue therefore becomes what definition by the court "is properly applicable to [this] particular factual situation" and whether that definition gives rise to a jury question under the *Botts* criteria. That issue brings us back to the parties' disagreement about the relevance of House's expectation and intent to whether the killings were accidental. If House's intent or expectation is relevant, then, without more, a jury question does exist, because a person's subjective expectations and intentions are manifestly issues of fact.[1] *See* note 2, *infra.*

---

[1] In *State Farm Fire & Cas. v. Reuter,* 299 Or 155, 160 n 3, 700 P2d 236 (1985), the court left open a "lurking question," which it did not have to decide in view of its holding that a rape victim who sought recovery from the rapist's insurer was estopped by the insured's conviction, despite his mental disease or defect defense, from asserting that the insured's mental condition made him incapable of acting intentionally. The court stated:

"The interesting lurking question is whether a finding in [the victim] Bullen's favor on her claim that [the offender] Reuter was 'suffering from a mental disorder which * * * caused [Reuter] to be unable to conform his conduct to the requirements of law' would necessarily bring Bullen's claim within the policy coverage, for such a finding is not necessarily inconsistent with a finding that Reuter was acting intentionally.

"Other courts have addressed the effect of a finding of insanity or mental derangement within the meaning of similar intentional injury exclusions of other policies. *See, e.g., Ruvolo v. American Cas. Co.,* 39 NJ 490, 498, 189 A2d 204, 208-09 (1963) ('We hold that if the insured was suffering from a derangement of his

 Neither party's position is completely correct. Defendant appears to disregard the fact that the question of coverage precedes and, if answered negatively, obviates the question of whether an exclusion applies. However, the greater problem is with plaintiff's argument. The relevance to coverage of House's "intent" and "expectation" does not arise from the fact that variations of those words appear in the exclusionary clause; his intent and expectation are relevant because they are *intrinsically* germane to whether the killings were accidental. Although the Supreme Court has formulated the test in a variety of ways, its opinions have consistently emphasized that a trier of fact may find that an event comes within the common understanding of an "accident" if it is unforeseen, unexpected, unintended or the like. *See, e.g., Botts v. Hartford Acc. & Indem. Co., supra,* 284 Or at 101-04; *Finley v. Prudential Ins. Co.,* 236 Or 235, 245-47, 388 P2d 21 (1963); *Trevathan v. Mutual Life Ins. Co.,* 166 Or 515, 525-28, 113 P2d 621 (1941).[2] If, as here, there is evidence that a person's intoxicated state makes him incapable of foresight or volition, it is a factual question whether the results of his actions are

---

intellect which deprived him of the capacity to govern his conduct in accordance with reason, and while in that condition acting on an irrational impulse he shot and killed Dr. La Face, his act cannot be treated as 'intentional' within the connotation of defendant's insurance contract.)' *Aetna Cas. & Sur. Co. v. Dichtl,* 78 Ill App 3d 970, 975, 298 NE2d 582, 587 (1979) (insurance recovery not precluded by intentional injury exclusion where wife found not guilty of murder by reason of insanity in killing husband, citing *Ruvolo*); *Rosa v. Liberty Mutual Insurance Company,* 243 F Supp 407, 409 (D Conn 1965) (insured was 'schizophrenic,' 'incapable of control of his behavior,' 'suffering from mental illness which rendered him incapable of committing an "intentional" act,' citing *Ruvolo* and other cases)."

The question which the court left open in *Reuter* is not identical to the one here. "Inability to conform one's conduct to the requirements of law" is not synonymous with "inability to act intentionally." However, the cases discussed by the court in *Reuter* appear to us to have more bearing on the question before us than on the question that the court said it did not reach in *Reuter.*

We do not understand plaintiff to argue, aside from its incorrect assertion that the *evidence* regarding the purposefulness with which House acted called for a directed verdict, that the questions of House's intent and expectation are not factual ones *if* they are germane to the determination of whether the shootings were accidents.

[2] We note, too, that, contrary to plaintiff's understanding that an objective standard applies, the rule in Oregon concerning coverage and exclusions for intentionally injurious acts is that "the acts must have been committed for the purpose of inflicting the injury and harm." *Nielsen v. St. Paul Companies,* 283 Or 277, 281, 583 P2d 545 (1978). The policy in *Nielsen* defined covered "occurrences" as including harm "neither expected nor intended from the standpoint of the Insured."

accidental. *See* n 1, *supra.*

We hold that the question of coverage here was for the jury. The error in the instruction therefore requires reversal. It also follows from what we have said that the special verdict form, asking for segregated and mutually exclusive findings as to whether the event was an accident and whether it was expected or intended, did not correctly structure the issues to be decided by the jury.[3]

Reversed and remanded.[4]

---

[3] It follows, too, that we agree in the main with the judge's definitional instruction:

"In determining whether this case involves an accident or not, you should view the evidence from the point of view of the insured, Kenneth Lee House, to see whether or not it was expected or intended."

Nothing in this opinion should be understood to mean that, *if* the jury finds that the consequences of House's conduct were accidental and within plaintiff's coverage, a further finding is not permissible or necessary concerning the applicability of the exclusion.

[4] Defendant makes one other assignment of error. It is without merit, and we do not discuss it.