Argued and submitted September 19, 1995, affirmed February 7, petition for review denied July 23, 1996 (323 Or 691)

## STATE FARM
## FIRE AND CASUALTY COMPANY,
an Illinois corporation,
*Respondent,*

*v.*

## Aaron GREEN
and Jerome Blake, a minor,
by and through his guardian, Robert Jester,
*Appellants.*

(9307-04401; CA A84962)

911 P2d 357

Larry Dawson argued the cause and filed the briefs for appellants.

J. Philip Parks argued the cause for respondent. With him on the brief were Parks, Bauer, Sime & Winkler, and J. Marie Bischman.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

De MUNIZ, J.

## De MUNIZ, J.

State Farm Fire and Casualty Company (State Farm) brought this declaratory judgment action seeking a declaration that it was not obligated to indemnify its insured, appellant Blake, for damages awarded to appellant Green. The trial court denied the motions for a directed verdict made by both sides, and the jury returned a verdict in favor of State Farm. We affirm.

Because the jury found in favor of State Farm, we state the facts in the light most favorable to it. *Propp v. Long*, 129 Or App 273, 275, 879 P2d 187, *rev den* 320 Or 271 (1994). Blake, who was about 16, was insured by State Farm as a member of his parents' household. On the night of the incident, Blake, a student, and some of his friends attended a party, which involved drinking. Blake, who was "pretty drunk," had a .357 magnum hand gun, which he showed to his friends.

Blake and his friends heard of another party at the home of another student, Atkinson, and decided to "crash" that party. Roughly 20 people were at the Atkinson home, which also involved some underage drinking but was a relatively quiet affair. When Blake's group showed up in front of the Atkinson home, playing loud music on their car stereos, people came out of the house, asked Blake and his friends to turn down the music, and told them that they were not welcome. A verbal confrontation followed, with one member of the Atkinson party threatening to "kick [the] ass" of one of Blake's friends who was wearing brass knuckles.

During the confrontation, there were people on the lawn and porch and inside the Atkinson house. Blake then took out his gun, held it in both hands and, despite efforts to restrain him, aimed it in the direction of the people on the porch and fired three shots in their direction. Blake knew that there were people on the porch and that the gun was loaded. Green was hit in the ankle by one of the shots as he ran from the doorway into the house. Green did not know Blake and had not been involved in the confrontation. There were bullet holes on the railing of the porch and in the living room window frame.

Witnesses described the incident: "[Blake] was pointing [the gun] in my direction, and Steve — well, you know, everybody's direction on the driveway." "[S]o it seemed like he was aiming right at the people. And the bulk of the people were running up, trying to get inside the house, and that's where he aimed to and fired." "He was firing just into the crowd. I don't know exactly who he was trying to hit or if he was trying to hit anyone, but straight into the crowd. * * * Just the house basically, the people — the people out in front of the house or anybody — anybody that was — anybody that was in the line of fire * * *." Blake testified that he drew the gun "subconsciously" and described his actions as a "reaction." He denied that he knew the angle of the gun when he shot it, but he admitted that he was facing towards the house; that he knew the gun was loaded; and that he knew that there were people in and outside of the house.

Blake pled guilty to assault in the second degree. Green then sued Blake and obtained a judgment against him. State Farm then brought this proceeding seeking a declaration that it did not owe coverage for the shooting.

Appellants' first two assignments of error, argued together, are that the trial court erred (1) in failing to hold that the policy exclusions relied on by State Farm to exclude coverage were inapplicable as a matter of law; and (2) in denying appellants' motion for a directed verdict. State Farm's policy covered an "occurrence," which the policy defined as "accident," and excluded injury caused by intentional acts or injury resulting from a "willful and malicious" act.[1] Appellants have not shown in the record where the trial court was asked to consider or where it denied any request to interpret the contract as a matter of law, and we address appellants' arguments under the first assignment only insofar as they are inextricably intertwined with the second.

Appellants' focus is on State Farm's burden of proof of intent. The gist of their argument is that the court was obligated to construe the contract to provide coverage, because there was no direct evidence that Blake aimed at

---

[1] The policy does not define "willful" or "malicious." We assume, without deciding, that appellants are correct that a subjective intent to injure is included in the terms.

Green or subjectively intended to shoot anyone. Therefore, the court could only hold, as a matter of law, that Green's injury was caused by an accident and that the exclusions for intentional or willful and malicious acts did not apply.

■■■ The common understanding of "accident" includes a lack of intent. *Safeco Ins. v. House*, 80 Or App 89, 96, 721 P2d 862, *rev den* 302 Or 86 (1986). For an exclusion for intentional acts to apply, the acts must have been committed for the purpose of inflicting the injury and harm. *Nielsen v. St. Paul Companies*, 283 Or 277, 281, 583 P2d 545 (1978). The intent must be to cause harm, not just intent to act. *Allstate Ins. Co. v. Stone*, 319 Or 275, 278, 876 P2d 313 (1994). Whether an insured subjectively intends to cause harm or injury is a question of fact. *Ledford v. Gutoski*, 319 Or 397, 403, 877 P2d 80 (1994). A court may infer subjective intent as a matter of law only when such subjective intent is the only reasonable inference that may be drawn from the insured's conduct. *Id.* at 404. Consequently, evidence of intent need not be direct but may be inferred from the nature and circumstances of the insured's actions. *See State v. Rose*, 311 Or 274, 282, 810 P2d 839 (1991) (evidence of a defendant's intent is rarely proven by direct evidence but, rather, is established by consideration of objective facts from which an ultimate conclusion is drawn).

■■ On review of the denial of a motion for a directed verdict, we may not set aside a jury verdict unless there is no evidence from which the jury could have found the facts necessary to establish the elements of the plaintiff's cause of action. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). The jury was instructed, without objection, that "accident" was to be given its ordinary meaning and that the question of whether the shooting was an accident should be determined from the viewpoint of the insured. It was also instructed, without objection, that the intentional injury exclusion applied to "bodily injury which is either expected or intended by an insured" and that "malicious" means "the doing of a wrongful act intentionally, without just cause." There was evidence that Blake carried a gun to the party and took it out despite efforts to restrain him. He aimed the gun into a crowd of people and fired it three times. He knew the gun was loaded and knew there were people in front of the

house. Although there was no direct evidence of Blake's subjective intent, there was ample circumstantial evidence from which the jury could conclude that the shooting was not an accident and that Blake had a subjective intent to injure.

Nonetheless, appellants contend that, "[b]y refusing to direct a verdict, the trial court essentially left to the jury the task of deciding whether to infer an intent to harm as a matter of law."[2] Appellants' misconstrue the role of the jury in determining subjective intent. Although an inference of intent cannot be compelled as a matter of law, that does not preclude the jury from drawing such an inference in performing its factfinding function. In other words, even though the circumstances here did not *necessarily* compel an inference that Blake intended to shoot someone, they were sufficient to permit the jury to so find. The trial court did not err in denying appellants' motion for a directed verdict.

Appellants' remaining two assignments of error, argued together, are that the trial court erred in refusing to give a requested instruction and in refusing to submit their verdict form to the jury. The requested instruction was:

> "The insurance policy in this case would exclude the damages awarded to Aaron Green only if Jerome Blake actually intended to injure Aaron Green. The insurance policy would not exclude those damages, even though Jerome Blake acted intentionally, unless there was an intent to injure Aaron Green."

The verdict form asked, "Did [Blake] intend to injure [Green]?" Both of these assignments ultimately rest on appellants' premise that State Farm had to prove that Blake intended specifically to injure Green, and that proof of Blake's general intent to harm others was legally insufficient. Thus, both the requested instruction and the verdict form were "personalized."

■ ■ We review to determine whether the proffered instruction and verdict form correctly expressed the law and, if they did, whether the failure to submit them may have affected the jury's deliberations. *See Nolan v. Mt. Bachelor,*

---

[2] Insofar as appellants contend that State Farm had to show that Blake intended to injure Green, we discuss, and reject, that contention below.

*Inc.*, 317 Or 328, 336, 856 P2d 305 (1993). There was no error. Although an insurer that invokes an "intentional acts" exclusion must prove its insured's subjective intent to injure, *Ledford*, 319 Or at 403, neither *Ledford* nor the earlier cases on which it relies hold that the insurer must prove an intent to harm a *specific* person. Thus, although there was no direct evidence that Blake intended specifically to shoot Green, the previously recited evidence demonstrates Blake's subjective intent to injure and was sufficient to support a verdict for the insurer. Because the requested instruction and verdict form presumed a showing of intent directed against a specific victim, they were erroneous.

Affirmed.