Argued and submitted January 27, affirmed December 8, 1993

STATE OF OREGON,
for and on behalf of
OREGON HEALTH SCIENCES UNIVERSITY,
*Respondent,*

*v.*

PHYSICIANS ASSOCIATION OF
CLACKAMAS COUNTY HEALTH PLANS, INC.,
an Oregon corporation,
*Appellant,*

*and*

Christopher J. HERD,
an incapacitated person,
*Defendant.*

(CV-91-043; CA A73205)
864 P2d 872

Nancy A. Tauman, argued the cause for appellant. With her on the briefs were A. Gregory McKenzie, Kenneth Kalafut and Hibbard, Caldwell & Schultz.

Jas. Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

**De MUNIZ, J.**

Plaintiff brought this declaratory judgment action against defendant Physicians Association of Clackamas County Health Plans, Inc. (PACC) and its insured, defendant Herd.[1] Plaintiff claimed that it was the third-party beneficiary of Herd's medical insurance plan issued by PACC and was entitled to reimbursement for services rendered under the plan. The trial court granted plaintiff's motion for summary judgment and denied defendant's cross-motion for summary judgment. We affirm.

PACC contracted with Associated Builders and Contractors to provide a health and medical insurance plan to its members. The plan is subject to the Employees Retirement Income Security Act (ERISA). 29 USC § 1001 *et seq*. Herd was a participant in the plan. In March, 1990, he was severely injured in a single vehicle accident. His blood alcohol level at the hospital was .129 percent. No traffic citation was issued, and no criminal charges were filed. As a result of the accident, Herd sustained brain damage and requires 24-hour care. OHSU provided Herd with emergency care and continued medical treatment with total expenses of more than $152,000.

PACC first argues that the trial court erred in granting summary judgment to plaintiff, because the plan is subject to ERISA, and thus federal law preempts state law and governs the interpretation of the insurance policy at issue. Plaintiff contends that PACC did not raise the ERISA argument below and that the alleged error, therefore, was not preserved. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991). The issue raised in the motions for summary judgment and argued before the trial court was whether the policy exclusion discussed below was ambiguous. PACC argues, however, that we may address its argument on ERISA, because the parties agree that the plan is subject to ERISA. It relies on the record, which shows that, after summary judgment was granted, plaintiff sought attorney fees under ERISA and filed an amended complaint admitting that the policy was covered under ERISA. Therefore, PACC

---

[1] Herd is not a party to this appeal.

contends, under the circumstances, we should address the alleged error.

We do not agree that plaintiff's claim for attorney fees under ERISA or its amended complaint is sufficient to preserve the argument PACC makes for the first time on appeal. The trial court denied attorney fees but did not review its decision on summary judgment. PACC does not claim that it asked the court to reconsider the summary judgment on the ground that it was subject to ERISA. The trial court was not presented with both sides of the issue and given an opportunity to correct any error. We decline to address the argument.[2] *Ailes v. Portland Meadows, Inc., supra*, 312 Or at 382 n 6.

■ The parties argue as to whether the exclusion under which PACC denied coverage is ambiguous. The exclusion provides:

> "Benefits do not apply to the treatment, results of treatment, or complications of the following which are in [PACC's] judgment:
>
> "* * * * *
>
> "14. Any loss to which a contributing cause was the Member's commission of, or attempt to commit, a felony or being engaged in an illegal activity."

Plaintiff's argument focuses on the language of the exclusion as a whole. It contends that "illegal activity" is ambiguous, because the phrase could refer only to felonies or could include misdemeanors, violations, infractions, or even non-compliance with regulations.[3] It argues that "illegal activity" is unclear, because the phrase might describe only conduct that has resulted in a conviction or might apply to any conduct that results in the filing of a complaint, indictment, citation, or even conduct that, as here, does not result in official action.[4] It also argues that the terms are ambiguous

---

[2] For the same reason, we do not address PACC's argument that the court should have applied an "arbitrary and capricious" standard to its denial of coverage.

[3] Here, for example, if Herd had been convicted or had pleaded guilty to driving under the influence of intoxicants, that would have constituted a class A misdemeanor, not a felony. ORS 813.010(3).

[4] PACC argues that engaging in illegal activity is analogous to illegal conduct that would be unenforceable if made part of the contract. We do not agree with the

because the "commission of * * * a felony" suggests that a single act is sufficient for the exclusion to apply, but "being engaged in an illegal activity" suggests a series of acts. Therefore, plaintiff concludes, because the exclusion is ambiguous, it must be construed against the insurer to provide coverage.

PACC argues that "illegal activity" is not ambiguous, because under any "popular" understanding, Herd's activity must be seen as illegal. However, the very definitions PACC cites demonstrate that the term "illegal" does not have a plain meaning.[5]

■ Despite the parties' arguments, this is not a case in which two competing plausible interpretations are available for an ambiguous term in an insurance policy so that the rule requiring interpretation against the insurer must be applied in order to resolve the ambiguity. *See Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 836 P2d 703 (1992). As the parties tried the case in this declaratory judgment proceeding, the definition of "illegal activity" was not at issue. The issue was whether Herd's activities constituted "illegal activity." The resolution of that question would generally present a question of fact for the jury. *See Safeco Ins. v. House*, 80 Or App 89, 95, 721 P2d 862, *rev den*, 302 Or 86 (1986); *see also Botts v. Hartford Acc. & Indem. Co.*, 284 Or 95, 103, 585 P2d 657 (1978); *Britt v. Kinzua Corp.*, 124 Or App 658, 863 P2d 507 (1993).

■ Here, however, the parties stipulated to these facts:

"Defendant Herd was severely injured as a result of a motor vehicle accident on March 24, 1990. He was alone in the vehicle on the driver's side when he was found unconscious. He was the registered owner of the vehicle. Upon

---

analogy. Courts will not enforce contracts in which the agreement is for the performance of illegal activities. Here, the agreement is to provide medical benefits. "Illegal activity" is an exclusion to that coverage.

[5] The breadth of possibilities is seen in PACC's citation to *Webster's New International Dictionary* 1126 (1981), which defines "illegal" as

"contrary to or violating a law or rule or regulation or something else having (as an established custom) the force of law."

transport to the hospital his blood alcohol level was determined to be .129. He was never cited nor convicted of any driving or criminal offense."

The parties then asked the court to decide whether those facts constituted "illegal activity."[6] The trial court concluded:

"Considering [the] rules of interpretation and construction, the facts outlined above do not constitute 'illegal activity' justifying PACC's exclusion of coverage."

That determination was made on the basis of the stipulated facts and entitles plaintiff to reimbursement.

Affirmed.

---

[6] As the Supreme Court explained in *Botts v. Hartford Acc. & Indem. Co.,* *supra,* 284 Or at 101-03:

"The insurance company may, of course, insert in its policy any definition of 'accident' it chooses but, in the absence of doing so, it must accept the common understanding of the term by the ordinary member of the purchasing public. * * *

"* * * * *

"Whether the decision is for judge or jury follows the familiar pattern. In situations in which 'accident' or 'accidental' are not defined in the policy, it is for the court to decide the definition which is properly applicable to the particular factual situation, taking into consideration what we believe to be the popular non-technical understanding of the term. If the evidence discloses that no reasonable jury could find that a view of the facts most favorable to plaintiff is within the definition established by the court, a verdict should be directed by the court for the defendant. If the undisputed facts clearly come within the definition, a judgment should be directed for plaintiff. If the facts are disputed, or if varying legitimate inferences can be drawn from established facts, the question is one for the jury."