Anthony CELARDO, Plaintiff–Appellee,

v.

GNY AUTOMOBILE DEALERS HEALTH & WELFARE TRUST, Defendant–Appellant,

Preferred Choice Management Systems, Inc., d/b/a Magna Care Defendant.

Docket No. 02–7209.

United States Court of Appeals, Second Circuit.

Argued: Nov. 15, 2002.

Decided: Jan. 27, 2003.

Terrence P. O'Reilly, Foley, Hickey, Gilbert & O'Reilly, New York, NY, for Defendant–Appellant.

E. Kevin Agoglia, Agoglia, Fassberg, Holland & Crowe, P.C., Mineola, NY, for Plaintiff–Appellee.

Before: KEARSE, McLAUGHLIN, and SOTOMAYOR, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Plaintiff sued his health insurance carrier, GNY Automobile Dealers Health & Welfare Trust (the "Trust"), and its third-party claims administrator, Preferred Choice Management Systems, Inc., d/b/a Magna Care ("Magna Care"). He alleged that, in violation of the Employee Retirement Income Security Act ("ERISA"), 29

U.S.C. § 1001 *et seq.*, the defendants denied him coverage for injuries he suffered in a serious automobile accident. Following a bench trial, the United States District Court for the Eastern District of New York (Wexler, *J.*) entered judgment for Celardo, concluding that the Trust's denial of benefits was arbitrary and capricious. On appeal, the Trust contends that its decision to deny coverage to Celardo was reasonable in light of Celardo's various traffic violations before the accident. We agree.

## BACKGROUND

The circumstances surrounding the accident are not in dispute. In 1998, Anthony Celardo worked as a car salesman at Gemini Enterprises, Inc. d/b/a Oyster Bay Nissan ("Nissan"). Nissan was a participating member of the Greater New York Automobile Dealers Association ("GNYADA"). The Trust was created pursuant to ERISA as an employee benefit plan providing health, dental, and medical benefits to the covered employees of GNYADA members. The Trust's health and medical coverage is described in the Triple Option Medical Benefits Plan (the "Plan"). The Plan is administered by Magna Care and Celardo was enrolled as a participant.

The Plan grants the Trustees of the Trust sweeping authority to determine eligibility and to construe its terms:

The Trustees shall have full and exclusive discretionary authority to determine all questions of coverage and eligibility .... [and] full and exclusive discretionary authority to construe the provisions of this Plan and the terms used herein.... Any such determination, construction or judgment adopted by the Trustees in good faith shall be final and binding upon all of the parties hereto and any participants and beneficiaries hereof. No decision of the Board of Trustees shall be reversed or overturned unless determined to be arbitrary and capricious.

Like most insurance plans, the Plan contains a number of exclusions and limitations. Relevant to this case, the Plan provides that no benefits will be paid for any "[c]harges incurred resulting from ... participation in or in consequence of having participated in *an illegal act.*" (emphasis added).

On a day off from his job at Nissan, Celardo took the license plates off his Nissan dealer's car and placed them on a 1980 Chevrolet Corvette. Owned by his mother, the Corvette was uninsured, unregistered, and uninspected after sitting dormant in a garage for seven and one-half years while Celardo was incarcerated on a state drug conviction. Celardo drove the Corvette to pick up his girlfriend, Diane Tornello. While driving to lunch with Tornello, Celardo crossed a solid, double-yellow line as he tried to pass another vehicle. He lost control of the Corvette and crashed into a tree. Both Celardo and Tornello were seriously injured in the accident.

After the accident, a Suffolk County Police Officer issued ten summonses to Celardo pursuant to the New York Vehicle and Traffic Law ("VTL"). Celardo's violations included: unregistered motor vehicle, in violation of VTL § 401; uninsured motor vehicle, in violation of VTL § 319; uninspected motor vehicle, in violation of VTL § 306(b); operation of a motor vehicle with license plates that are not proper for that vehicle, in violation of VTL § 402(4); using dealer license plates on a vehicle that is not owned or controlled by the dealer, in violation of VTL § 415(8); driving a vehicle on the left side of a double-yellow line on a highway, in violation of VTL § 1126(a); and driving with

four bald tires, in violation of VTL § 375(35(c)).

Celardo's hospital and medical bills were submitted to Magna Care by Celardo's medical providers. After the Trust reviewed Celardo's claim, Magna Care notified him that his claim would be denied because his injuries were sustained as the result of his participation in "illegal" acts for which there was no coverage. The Trust expressly identified Celardo's illegal acts as driving an unregistered, uninsured, uninspected vehicle with improper dealer license plates across a solid, double-yellow line. Celardo appealed the Trust's denial of coverage to the Trust's Board of Trustees, which upheld the denial of Celardo's claim.

Celardo then filed this action against the Trust and Magna Care in the United States District Court for the Eastern District of New York (Wexler, *J.*) pursuant to 29 U.S.C. § 1132(a)(1)(B), (a)(3). Not long after the suit was commenced, the parties filed a joint stipulation dismissing Magna Care from the action. The district court later denied both the Trust's and Celardo's motions for summary judgment, finding there were genuine issues of fact.

After a one-day bench trial, in which Celardo was the only witness, the district court concluded that the Trust had acted arbitrarily and capriciously in denying Celardo's claim for medical benefits. *See Celardo v. GNY Auto. Dealers Health & Welfare Trust,* 184 F.Supp.2d 235, 237 (E.D.N.Y.2002). The district court stated that the Trust had no basis for its determination that Celardo's accident "resulted from" or was "in consequence" of any of the conduct resulting in the summonses upon which the defendant relied to deny coverage. *Id.* Further, the court held that "even assuming that that conduct [resulting in the summonses] constituted 'illegal acts,' there is no basis for finding that such

conduct caused the accident and resulting hospital and medical charges." *Id.*

This appeal followed.

## DISCUSSION

On appeal, the Trust reproves the district court for failing to apply the highly deferential arbitrary and capricious standard of review. Specifically, the Trust maintains that it made a reasonable determination that Celardo's injuries were the direct result of his illegally placing the dealer license plates on the unregistered, uninsured, uninspected, and unroadworthy Corvette. According to the Trust, this construction of the Plan's terms was supported by the evidence and should not have been overturned by the district court. For the reasons that follow, we agree.

### I. *Standard of Review*

Following a bench trial, we review a district court's findings of fact for clear error and its conclusions of law *de novo. See* Fed.R.Civ.P. 52(a); *Connors v. Connecticut Gen. Life Ins. Co.,* 272 F.3d 127, 135 (2d Cir.2001). Because the district court's determination that the Trustees' decision was arbitrary and capricious is a legal conclusion, we review that determination *de novo. See Zervos v. Verizon N.Y., Inc.,* 277 F.3d 635, 646 (2d Cir.2002); *Miller v. United Welfare Fund,* 72 F.3d 1066, 1070 (2d Cir.1995).

ERISA does not itself prescribe the standard of review for challenges to benefit eligibility determinations. The Supreme Court, however, has indicated that plans investing the administrator with broad discretionary authority to determine eligibility are reviewed under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see also Zuckerbrod v. Phoenix Mut. Life Ins.*

*Co.*, 78 F.3d 46, 49 (2d Cir.1996). Here, the parties agree that this highly deferential standard applies and concede that the Plan confers broad discretion upon its administrator.

Under the arbitrary and capricious standard, the scope of judicial review is narrow. *Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 117 (2d Cir.2002); *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995). A court may overturn a plan administrator's decision to deny benefits only if the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan*, 52 F.3d at 442 (internal quotations omitted); *see also Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir.1995) ("The Court may not upset a reasonable interpretation by the administrator."). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] ... requires more than a scintilla but less than a preponderance." *Miller*, 72 F.3d at 1072 (internal quotations omitted).

In a situation "[w]here both the trustees of [an ERISA plan] and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control." *Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 601 (2d Cir.1983). We have also stressed that courts "are not free to substitute [their] own judgment for that of the [plan administrator] as if [they] were considering the issue of eligibility anew." *Pagan*, 52 F.3d at 442.

## II. *The Trust's Denial of Celardo's Claim*

Celardo contends that the Trust's interpretation of the exclusionary phrase "resulting from ... participation in or in consequence of having participated in an illegal act" was arbitrary and capricious because Celardo's traffic violations: (1) did not constitute illegal acts under the Plan; and (2) did not cause or contribute to his accident. The district court agreed in part, finding that because Celardo's traffic violations did not "cause" his injuries the Trust was arbitrary and capricious in denying coverage. We are not persuaded and we conclude that the Trust's denial of coverage was based on a rational interpretation of the Plan's provisions and was supported by substantial evidence.

## A. *Illegal Acts*

Celardo's contention that violations of the VTL are mere "traffic infractions" that do not amount to "illegal acts" smacks of casuistry. The Trustees' broad discretion to interpret the Plan's terms can only be disturbed where they "interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous ...." *O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir.1995) (quoting *Miles*, 698 F.2d at 599). Here, the Trustees' interpretation of the phrase "illegal acts" was not unreasonable. While Celardo would have us hold that "illegal" means "criminal," this interpretation contravenes the plain, common-sense meaning of "illegal." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002) (the terms of an ERISA plan should be accorded their plain meaning). The dictionary definition of "illegal" is "contrary to or violating a law or rule or regulation or something else (as an established custom) having the force of law." Webster's Third New Int'l Dictionary 1126 (Philip Babcock Gove ed.1981). Traffic infractions prohibited by the VTL may reasonably be encompassed by this definition

even if they are not considered crimes in New York.

Celardo emphasizes that all but two of the summonses issued after the accident were eventually dismissed when he pled guilty to the remaining two infractions: operating a vehicle with bald tires and operating an uninsured vehicle. The significance of this fact is lost on the Court when it is noted that Celardo admitted at trial that he was in fact guilty of each of the ten summonses that he was issued.

## B. *Causation*

Celardo's argument that there was no basis for the Trustees' decision that his traffic violations caused his injuries is wide of the mark. Applying notions of proximate cause taken from tort law, Celardo simply posits the absence of a causal link between his traffic violations and his injuries. This may or may not be true, but it distorts our role; we are confined to determining whether the Trustees' interpretation of the Plan's terms was reasonable and supported by the evidence. While Celardo has a decent argument that his placing the dealer plates on the unregistered, uninsured, and uninspected Corvette did not directly cause his injuries, the argument collapses when one considers Celardo's illegal act of crossing the solid, double-yellow line to pass another vehicle immediately before he crashed. *See* Letter from Trust Administrator James A. Payton to Celardo, dated July 27, 1998 (citing, *inter alia*, Celardo's driving on the left side of a double-yellow line in violation of VTL § 1126 as one of the illegal acts that led to the Trust's denial of coverage for his injuries). The Trustees thoroughly considered the circumstances of Celardo's accident, and it is difficult to dispute the determination that this infraction caused Celardo's injuries. Indeed, Celardo himself does not address this point in his brief.

The Trust supports its causation analysis by arguing that had Celardo not illegally placed the dealer plates on the Corvette, he would not have been able to drive the Corvette on that fateful day. Again, while this causal link is not overwhelming, the Trustees' reading of the policy language excluding injuries "resulting from ... participation in ... an illegal act" as barring recovery for Celardo's injuries is a reasonable interpretation of the Plan. That is sufficient for us. *See O'Shea,* 55 F.3d at 112; *Pagan,* 52 F.3d at 443 ("Where it is necessary for a reviewing court to choose between two competing yet reasonable interpretations of a ... plan, this Court must accept that offered by the administrators.").

## III. *Attorney's Fees*

■ The Trust asks us to award attorney's fees for defending this action. It is the general rule that "attorney's fees should not be charged against ERISA plaintiffs." *Salovaara v. Eckert,* 222 F.3d 19, 28 (2d Cir.2000) (internal quotations omitted). The Trust asserts, nevertheless, that it is both "appropriate and manifestly fair" for the Trust to be awarded attorney's fees under the circumstances of this case. Appellant's Br. at 28.

■ In an action by a plan beneficiary to enforce his rights under ERISA, a court may "in its discretion ... allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). It is well established, however, that "the decision of whether or not to award attorney's fees in an ERISA case is committed to the sound discretion of the district court ...." *Jones v. UNUM Life Ins. Co.,* 223 F.3d 130, 139 (2d Cir.2000); *see also Connors,* 272 F.3d at 137. Thus, when a district court has not considered in the first instance whether a party is entitled to attorney's fees, our practice is to remand the

matter to the district court to decide this issue. *See, e.g., Connors,* 272 F.3d at 137. Therefore, we decline to decide this issue and, guided by our precedent, remand this action to the district court.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED and the case is REMANDED with instructions to dismiss the complaint and to decide the issue of attorney's fees.