**James B. BEKOS, Plaintiff,**

v.

**PROVIDENCE HEALTH PLAN, an Oregon Corporation, Defendant.**

No. CV–04–128–ST.

United States District Court, D. Oregon.

July 16, 2004.

Duane K. Petrowsky, McKeown & Brindle, P.C., Portland, OR, for Plaintiff.

Andrea M. Davis, Arden J. Olson, Harrang Long Gary Rudnick, PC, Portland, OR, for Defendant.

## OPINION AND ORDER

STEWART, United States Magistrate Judge.

### INTRODUCTION

Plaintiff, James B. Bekos ("Bekos"), originally filed this action in Multnomah County Circuit Court,[1] seeking declaratory relief against defendant, Providence Health Plan ("Providence"), that medical expenses he incurred in an accident on November 8, 2002,[2] are covered under the terms of a health insurance contract maintained by his employer and administered by Providence.

On January 27, 2004, Providence timely removed the action to this court, alleging jurisdiction pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC § 1132(e)(1). On February 4, 2004, Providence alleged a counterclaim against Bekos for costs and attorneys' fees pursuant to 29 USC § 1132(g)(1).

This matter is now before this court on the parties' cross-motions for summary judgment. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). For the reasons that follow, Providence's Motion for Summary Judgment (docket # 6) is DENIED and Bekos's Motion for Summary Judgment (docket # 12) is GRANTED.

### DISCUSSION

#### I. Factual Background

Providence is a non-profit corporation which issues and processes health care service contracts and claims concerning its members. At the time of the accident in this case, Bekos was a plan participant or beneficiary under the Providence Health System—Oregon EPO Plan ("Plan"), a qualified health plan under ERISA administered by Providence.

On November 8, 2002, shortly after 10 p.m., Bekos rode his motorcycle on North Saratoga Street in Portland, Oregon. After finishing his ride, Bekos got off of and began pushing his motorcycle.[3] While pushing, Bekos dropped his motorcycle and fell over it. Shortly thereafter, a passerby called emergency services and Bekos was transported to the hospital by ambulance.

Officers of the Oregon State Police ("OSP") also responded to the accident scene. After analyzing the accident scene and interviewing Bekos, OSP Officer Barnum placed Bekos under arrest for driving while under the influence of intoxicants in violation of ORS 813.010.[4] Bekos consent-

---

1. *Bekos v. Providence Health Plan,* Multnomah County Civil Case No. 0401–00112.

2. The state court pleadings reference an accident date of October 8, 2002, but the parties now state that the accident was on November 8, 2002, which is consistent with the police reports.

3. Providence has agreed to accept Bekos's version of the facts for purposes of these motions.

4. Officer Barnum apparently also charged Bekos with failure to wear a helmet in violation of ORS. 814.269, no motorcycle endorsement in violation of ORS 807.010, failure to carry proof of insurance in violation of ORS 806.012, and reckless driving in violation of ORS 811.140.

ed to having his blood drawn at the hospital. Later laboratory testing revealed a blood alcohol content of 0.25%.

As a result of the injuries sustained in the accident, Bekos incurred medical bills totaling over $10,000.00. Bekos made demand on Providence to pay those charges. Providence denied Bekos's claim for payment based on the Plan's exclusion of an "illegal act." This action followed.

## II. *Analysis*

### A. *Standard of Review*

■ In actions to recover benefits under an ERISA plan, the court employs a *de novo* standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan vests the administrator with such discretionary authority, a district court may review the administrator's decision only for an abuse of discretion. *Id.* The abuse of discretion standard is the same as the deferential "arbitrary and capricious" standard. *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279 (9th Cir.1990), *cert denied* 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991).

Providence concedes that the *de novo* standard of review applies in this case.

### B. *Interpretation of Contractual Terms Under ERISA*

■ The courts are authorized " 'to formulate a nationally uniform federal common law to supplement the explicit provisions and general policies set out in ERISA.' " *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 411 (9th Cir.), *cert denied*, 516 U.S. 942, 116 S.Ct. 377, 133 L.Ed.2d 301 (1995), quoting *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1500 (9th Cir.1984). "ERISA does not contain a body of contract law to govern the interpretation and enforcement of employee benefit plans. Rather, Congress intended that courts apply contract principles derived from state law but be guided by the policies expressed in ERISA and other federal labor laws." *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir.1997) (citation omitted).

■ When applying a federal common law rule, courts must keep in mind "that 'the common law decision-making process is inherently incremental in nature ... [and] calls for devising a rule that does not stray too far from the existing regime.' " *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1135 (9th Cir.1996), quoting *PM Group Life Ins. Co. v. Western Growers Assurance Trust*, 953 F.2d 543, 547 (9th Cir.1992). Federal common law "interpret[s] terms in ERISA insurance policies in an ordinary and popular sense as would a person of average intelligence and experience." *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1125 (9th Cir.), *cert denied*, 537 U.S. 1067, 123 S.Ct. 602, 154 L.Ed.2d 556 (2002).

### C. *The "Illegal Act" Exclusion*

Among other exclusions, the Plan excludes coverage for services and supplies which:

> Relate to any condition sustained as a result of engagement in an illegal occupation, the commission or attempted commission of an assault *or other illegal act*, a civil revolution or riot, duty as a member of the armed forces of any state or country, or a war or act of war which is declared or undeclared.

Answer, Exhibit 1, p. 39 (emphasis added).

Driving under the influence of intoxicants ("DUII") is a violation of Oregon law:

A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person: (a) Has 0.08 percent or more by weight of alcohol in the blood of the person ...

ORS 813.010(1)(a).

Therefore, Providence contends that Bekos's injuries, which relate to driving a motorcycle with a blood alcohol content of 0.25%, are excluded from coverage under the Plan as an "illegal act."

### 1. Whether Bekos Was "Driving" When Injured

■ Since Bekos was not riding his motorcycle at the time he was injured, the first issue is whether he was "driving" a vehicle as required by ORS 813.010. Although the term "drive" is not defined in Oregon's motor vehicle code, the Oregon Court of Appeals has concluded that "driving" includes "any operation, towing, pushing, movement or [other] propelling" of a vehicle, which is the definition of "operation" in ORS 801.370.

In *State v. Cruz*, 121 Or.App. 241, 855 P.2d 191 (1993), the defendant was riding in a car driven by his wife. After the defendant grabbed the steering wheel, his wife applied the brakes and stopped the car. The defendant then stepped on the accelerator, causing the car to accelerate rapidly. After his wife again stopped the car, the defendant was arrested for DUII. At trial, the defendant suppressed the results of an intoxilyzer test and his statement that he had grabbed the steering wheel because he was not "driving" the car within the meaning of ORS 813.010. The Court of Appeals reversed, concluding that the legislature "intended that a person who 'operates' a motor vehicle, within the meaning of ORS 813.100, also 'drives' under ORS 813.010." *Cruz*, 121 Or.App. at 244, 855 P.2d at 192–93.

In *Moe v. Motor Vehicles Div.*, 133 Or. App. 75, 889 P.2d 1334 (1995), the plaintiff consumed alcohol and then sat in the passenger seat of a parked car. In order to open the car's windows, he turned on the ignition and while reaching for the window controls on the driver's side door, accidently hit the gear shift, knocking the car into gear. The car lurched forward, hitting other cars. The Motor Vehicles Division suspended the plaintiff's license after he refused to take a breath test. Plaintiff appealed on the ground that he was not "driving" while under the influence. Relying on *Cruz*, the Court of Appeals upheld the suspension order on the ground that plaintiff was a "driver" because his acts constituted "the operation, movement or propulsion of the car." *Moe*, 133 Or.App. at 79, 889 P.2d at 1337.

Therefore, by pushing his motorcycle while intoxicated, Bekos violated Oregon law.

### 2. Ambiguity of the Exclusion

Nevertheless, Bekos contends that because the term "illegal act" is ambiguous, the Plan's exclusion must be interpreted against Providence and in favor of coverage.

#### a. Legal Standard

"This court reviews *de novo* whether [and ERISA] plan's terms are ambiguous." *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 552–53 (9th Cir.), *cert denied*, 516 U.S. 908, 116 S.Ct. 276, 133 L.Ed.2d 197 (1995) (citations omitted). "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire ... agreement." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2nd Cir.2002) (citation omitted); *see also Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir. 1995) (ambiguity exists "if, on the face of the contract, two reasonable and fair interpretations are possible.")

■ "ERISA insurance policies are governed by the rule that ambiguous language is construed against the insurer and in favor of the insured." *McClure*, 84 F.3d at 1134, citing *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539–40 (9th Cir.) (as amended), *cert denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990); *see also Perreca v. Gluck*, 295 F.3d 215, 223 (2nd Cir.2002); *Simkins v. NevadaCare, Inc.*, 229 F.3d 729, 735 (9th Cir.2000), *cert denied*, 532 U.S. 957, 121 S.Ct. 1484, 149 L.Ed.2d 372 (2001) (citing *McClure*). However, the court may "not artificially create ambiguity where none exists. If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir.1990) (internal quotation marks and citations omitted).

### b. *Analysis*

■ The Plan does not define the phrase "other illegal act." Bekos argues that this phrase is ambiguous because it is susceptible to more than one meaning. It could be interpreted narrowly to include only violent acts directed against third parties, which would exclude DUII, or broadly to include all sorts of activities which are not generally considered illegal, such as jaywalking or various other misdemeanors, violations, infractions, or noncompliance with regulations. As a result, Bekos contends that the exclusion must be interpreted against Providence and in his favor.

Interpreting the illegal act exclusion "in an ordinary and popular sense as would a person of average intelligence and experience," *Padfield*, 290 F.3d at 1125, Providence contends that any reasonable person would understand that an "illegal act" encompasses conduct which violates state law. Since driving with a blood alcohol content of 0.25% is clearly an "illegal act"

under state law, Providence argues that a plan administrator does not violate federal common law by denying coverage for that reason.

However, the Oregon Court of Appeals has found that the term "illegal activity" in an insurance policy exclusion does not have a plain meaning. In *Oregon Health Sciences Univ. v. Physicians Ass'n of Clackamas Co. Health Plans, Inc.*, 125 Or.App. 199, 864 P.2d 872 (1993) ("*OHSU*"), the insured was injured in a car accident. At trial, the parties stipulated that the insured was found alone in his vehicle, unconscious with a blood alcohol level of 0.129%. He was not cited with a driving or criminal offense. OHSU, the medical services provider, argued that as a third party beneficiary of the defendant's health insurance contract, it was entitled to reimbursement for services provided to the insured. The defendant denied the claim on the basis of an exclusion in the policy for "[a]ny loss to which a contributing cause was the Member's commission of, or attempt to commit, a felony or being engaged in an illegal activity."

OHSU argued that "illegal activity" was ambiguous "because the phrase could refer only to felonies or could include misdemeanors, violations, infractions, or even noncompliance with regulations." *Id.*, 125 Or.App. at 202, 864 P.2d at 874. It also argued that the phrase is unclear because it "might describe only conduct that has resulted in a conviction or might apply to any conduct that results in the filing of a complaint, indictment, citation, or even conduct that, as here, does not result in official action." *Id.* The defendant countered that the phrase is not ambiguous "because under any 'popular' understanding, [the insured's] activity must be seen as illegal." *Id.* Based on "the very definitions" cited by defendant, the court found that "the term 'illegal' does not have a

plain meaning." *Id.,* 125 Or.App. at 203, 864 P.2d at 874. Nevertheless, it did not resolve that ambiguity by interpreting the exclusion against the insurer. The trial court concluded that the facts "do not constitute illegal activity justifying [the defendant's] exclusion of coverage." *Id.,* 125 Or.App. at 204, 864 P.2d at 875. Because that determination was based on stipulated facts, summary judgment in favor of OHSU was affirmed.

Providence contends that this lone Oregon decision has no precedential value for two reasons. First, *OHSU* interpreted the contract under state law and not under ERISA. On appeal, the defendant argued for the first time that the contract was governed by ERISA and should be interpreted under federal law. The court rejected that argument, stating:

> PACC [defendant] first argues that the trial court erred in granting summary judgment to plaintiff, because the plan is subject to ERISA, and thus federal law preempts state law and governs the interpretation of the insurance policy at issue.... We decline to address the argument.

*Id.,* 125 Or.App. at 201–202, 864 P.2d at 873–74.

■ Because this case arises under federal law, state law does not automatically apply. However, the general principles of state law are relevant to the interpretation of ERISA-governed insurance contracts. *Saltarelli v. Bob Baker Group Med. Trust,* 35 F.3d 382, 386 (9th Cir.1994). In fact, "courts are directed to formulate federal common law by considering *both* state law and governing federal policies." *Security Life Ins. Co. of Am. v. Meyling,* 146 F.3d 1184, 1191 (9th Cir.1998) (emphasis added). ERISA does not require the development of an entirely new federal common law of insurance contract interpretation separate and apart from state law. Instead, the question is whether as a matter of federal law, the court should follow the state law of contract interpretation. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 728–29, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). By finding that the term "illegal activity" under Oregon law is ambiguous, *OHSU* is clearly relevant to the interpretation of the Plan in this case under ERISA.

Second, Providence urges this court to ignore *OHSU* because it is contrary to the previously developed federal common law in this area. Providence is correct that "illegal act" exclusions have been reviewed and enforced under ERISA by several federal courts. However, each of these cases is distinguishable.

Some of the cases cited by Providence do not address the issue faced by this court. In *SGI/Argis Employee Benefit Trust Plan v. The Canada Life Assur. Co.,* 151 F.Supp.2d 1044 (E.D.Ark.2001), the insured was injured while driving his car while intoxicated. The insurer denied coverage under the ERISA plan's exclusion for: "Treatment or service resulting from or occurring (a) during the commission of a crime by the participant; or (b) while engaged in an illegal act (including DWI), illegal occupation or aggravated assault ..." *Id.* at 1045–46. The plaintiff argued against enforcement of the exclusion because it did not explain if a conviction was required to qualify as an illegal act. The court disagreed, holding that the exclusion was unambiguous in this regard:

> It is unreasonable to read the term "illegal act" as requiring judicial action and conviction. Driving while "intoxicated," as that term is defined by Texas law, is illegal whether a person is convicted of the crime or not. The drafters of this exclusion could have required a conviction for Exclusion 14 to apply by including such language in the Plan. The natu-

ral meaning of the term does not include such a requirement.

*Id.* at 1048.

The exclusion in *SGI/Argis*, unlike the exclusion in this case, specifically included "an illegal act (including DWI)." Therefore, the court was not asked to interpret whether the exclusion included DWI, but only whether a conviction for DWI was first required.

In *Celardo v. GNY Automobile Dealers Health and Welfare Trust,* 318 F.3d 142 (2nd Cir.2003), a beneficiary challenged the validity of an illegal act exclusion when his claim was denied based on traffic infractions received in connection with the injury-causing accident. Applying the abuse of discretion standard, the court found that the denial of coverage was based on a rational interpretation of the illegal act exclusion:

> Celardo's [plaintiff's] contention that violations of the VTL [Vehicle Traffic Laws] are mere "traffic infractions" that do not amount to "illegal acts" smacks of casuistry.... While Celardo would have us hold that "illegal" means "criminal," this interpretation contravenes the plain, common-sense meaning of "illegal." The dictionary definition of "illegal" is contrary to or violating a law or rule or regulation or something else (as an established custom) having the force of law. Traffic infractions prohibited by the VTL may reasonably be encompassed by this definition even if they are not considered crimes in New York.

*Id.* at 146, *citing* Webster's Third New Int'l Dictionary 1126 (Philip Babcock Gov. ed.1981).

*Celardo* applied the abuse of discretion standard which defers to the administrator's plan interpretation. If a plan provision is ambiguous and susceptible to two reasonable interpretations, then choosing one of those two interpretations cannot be arbitrary and capricious. *Celardo* merely

held that including traffic citations as crimes was *a* reasonable interpretation of the exclusion, not *the only* reasonable interpretation. In this case, the Plan does not grant discretion to Providence to interpret the terms of the Plan, and governing law requires this court to review *de novo* whether the relevant phrase is ambiguous. *Winters,* 49 F.3d at 552–53.

*Folks v. Kirk Paper Corp. Med. & Dental Benefit Plan,* 1999 WL 16326 (N.D.Cal. 1999), upheld the plan's denial of benefits to a beneficiary who sustained injury while driving while intoxicated. The plan excluded coverage for expenses "sustained as a result of being engaged in; an illegal occupation, commission or attempted commission of an assault or other illegal act." *Id.* at *1. The court rejected plaintiff's argument that the term "illegal act" was intended to apply only to specific intent crimes such as assault:

> Not only has Plaintiff failed to introduce any evidence or argument which would persuade the Court to conclude otherwise, the Court believes that Plaintiff's proposed construction runs afoul of the plain language of the exclusion. If, as Plaintiff suggests, the exclusion was meant to cover only specific intent crimes, the Court believes that the drafters of the exclusion would have so stated. Instead, inclusion of the phrase "or other illegal act," clearly refers to the commission or attempted commission of *any illegal act.*

*Id.* at *3, n. 4 (emphasis added).

As in *Celardo, Folks* held only that the plan administrator did not abuse its discretion. Furthermore, the phrase "other illegal act" interpreted by *Folks* appears in a quite a different context than the exclusion at issue here, as discussed below.

Another case supporting Providence is *Sisters of the Third Order of St. Francis v. SwedishAmerican Group Health Benefit*

*Trust,* 901 F.2d 1369 (7th Cir.1990), which reviewed a denial of benefits under an exclusion for "expenses incurred . . . [w]hile engaged in any illegal or criminal enterprise or activity." *Id.* at 1370. The court rejected the plaintiff's argument that drunk driving was not the sort of illegal activity to which the plan language referred. Finding no ambiguity in the exclusion, the court stated:

> Drunk driving is a serious crime, causing the deaths of more than 20,000 persons annually. . . . Injuries arising from the combination of liquor and motorcars are self-inflicted, and a health insurance plan . . . need not draw down the assets contributed by the provident many to shift the cost of self-destructive behavior.

*Id.* at 1372.

*Sisters* did not resolve the level of deference that applied to the plan administrator's decision, but instead determined that even under *de novo* review, drunk driving was included within the language of the exclusion for "any illegal . . . activity." However, this case was decided without the benefit of state law as expressed by *OHSU* a few years later and interpreted an exclusion which is worded quite differently than the exclusion at issue here.

Because none of these federal cases involves *de novo* review of the identical exclusion, the federal common law in this area is still in the process of being developed. As a result, this court may consider general principles of state law, including those applied by *OHSU* to a similar exclusion.

Based on *de novo* review and applying the general rules of contract interpretation, this court finds that the phrase "other illegal act," when read in the context of the entire Plan, is ambiguous in two respects. First, the phrase is ambiguous with regard to the level of offense which will trigger the exclusion. Second, the phrase is ambiguous with regard to whether any third-party action is required to trigger the exclusion.

With respect to the level of offense, the Plan does not specify whether the phrase "other illegal act" includes or excludes misdemeanors, violations, infractions, noncompliance with regulations, or any of the above. However, the context of the phrase strongly suggests that it is directed at intentional acts which involve third parties. Specifically, the language preceding the words "other illegal act" excludes conditions sustained as a result of the "attempted commission of an assault," and that phrase is part of a sentence which excludes coverage for conditions sustained as a result of engaging in a number of specific activities, including an "illegal occupation, . . . a civil revolution or riot, duty as the member of the armed forces of any state or country, or a war or act of war." Answer, Ex 1, p. 39. An assault, illegal occupation, revolution, riot, and war all involve intentional and mostly violent acts directed against or inflicted by third parties.

Providence argues that DUII is akin to committing or attempting to commit an assault and that, as a matter of public policy, the phrase "other illegal act" should be read to include intentionally or recklessly self-inflicted injuries which are avoidable. The difficulty with this argument is that it ignores the context of the phrase "other illegal act" and opens the door to a denial of coverage for any number of injuries which happen to coincide with a variety of relatively minor traffic infractions or permitting violations. If interpreted without regard to its context, the "other illegal act" phrase arguably would exclude coverage for injuries to beneficiaries who: (1) trip on a sidewalk while jaywalking; (2) have their cars hit by a semi-truck while driving one mile per hour

over the posted speed limit or not wearing a seatbelt; (3) are hit by another vehicle while executing a turn without displaying a turn signal; (4) fall off a ladder while remodeling a house without all relevant governmental permits; (5) are bitten by their dog when they have not yet obtained a dog license; or (6) fall into a fire while burning yard debris with no burn permit. A reasonably intelligent person objectively examining the "other illegal act" phrase in the context of the entire exclusion would not expect a denial of coverage for these types of activities.

Apart from being inconspicuously placed between such things as injuries sustained during civil disturbances or wars, the phrase "other illegal act" is also inconspicuously set out in the exclusions section. The Plan includes 16 exclusions, and all except the "other illegal act" exclusion relate to particular types of services which are not covered, such as those: (1) not provided; (2) received before the effective date; (3) not furnished by qualified practitioners or qualified treatment facilities; (4) provided by persons who reside in the beneficiary's home; (5) are not medically necessary, or are experimental, investigational, or for research purposes; or (6) are received under the Oregon Death with Dignity Act. Every other exclusion turns on whether the expenditure relates to a covered service, by whom and at what facility the service was provided, the purpose of the service, whether the service is payable under any other plan or law. The carefully worded manner in which these more limited exclusions are explained also suggests that the context of the phrase "other illegal act" is important.

The "other illegal act" exclusion is also ambiguous as to whether any official action (such as a citation, complaint, indictment, or conviction) is required to trigger its application. The Plan gives no discretion to Providence to interpret its terms, yet the exclusion clearly anticipates a finding of fact that the injuries for which the beneficiary seeks payment resulted from the "commission or attempted commission" of an "assault or other illegal act." A reasonably intelligent person objectively reading this phrase could conclude that a conviction by a governmental authority is required to trigger the exclusion, at least insofar as the "other illegal act" portion is concerned.

This court concludes that the term "other illegal act" as used in the Plan is ambiguous because it is capable of more than one meaning in at least two respects when "viewed objectively by a reasonably intelligent person who has examined the context of the entire ... agreement." *Fay*, 287 F.3d at 104. At one end of the spectrum, the phrase might include only injuries received during the course of the commission or attempted commission of felonies of which the beneficiary is eventually convicted. At the other end of the spectrum, the phrase plausibly could reach such a broad array of activity as to be rendered applicable in situations involving minor traffic offenses or violation of any number of regulations, with or without a conviction, or even a citation.

Providence argues that it forwards the strong federal and state policies against DUII to interpret the "other illegal act" exclusion to exclude the services provided to Bekos and urges that to do otherwise would be tantamount to making light of the crime of DUII. However, the narrow issue before this court is whether the policy exclusion, as drafted by Providence, is ambiguous. This court concludes that the phrase "other illegal act" is capable of more than one meaning when viewed by a reasonably intelligent person examining the context of that phrase in the context of the entire Plan. As a result, that phrase is

ambiguous and Bekos is entitled to have that ambiguity resolved in his favor.

Accordingly, this court interprets the phrase "other illegal act" narrowly to exclude Bekos's arrest for DUII and awards judgment in favor of Bekos.

### D. *Attorney Fees*

Both parties move for attorney fees. Since Bekos has prevailed, the issue is whether his motion should be granted. Statutory authority for an award of attorney fees and costs in actions involving delinquent contributions is provided in 29 USC § 1132(g)(1) as follows:

> In any action under this subchapter … by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

■ Accordingly, this court has discretion whether to award attorney fees. In determining the appropriateness of an award of fees, the court generally considers five factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees … would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1148 (9th Cir.2003), quoting *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980).

■ Based on decisions by other federal courts involving similar (but not identical) exclusions, Providence did not act in bad faith by denying Bekos's claim. Nevertheless, Providence ignored the contrary authority of the Oregon Court of Appeals in *OHSU* and erroneously interpreted and enforced an ambiguous and ill-defined exclusion without the benefit of discretionary authority under the Plan to protect it from that error. An award of fees to Bekos would deter other plan administrators from denying benefits under similar circumstances and would benefit not only all participants and beneficiaries of this particular Plan, but of other ERISA plans containing this same exclusion. Providence does not contend that it lacks the ability to satisfy an award of fees. Thus, the relevant factors weigh in favor of awarding Bekos his reasonable attorney fees and costs incurred in this action.

### ORDER

For the reasons stated above, Providence's Motion for Summary Judgment (docket # 6) is DENIED and Bekos's Motion for Summary Judgment (docket # 12) is GRANTED. In addition, Bekos is awarded reasonable his attorney fees and costs incurred in this action.