21-1410-cv
*Caccavo v. Reliance Standard Life Insurance Co.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of June, two thousand twenty-two.

Present:

> AMALYA L. KEARSE,
> DENNIS JACOBS,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

_____

FRANK CACCAVO, BY AGENT-IN-FACT, LAURIE CACCAVO,

> *Plaintiff-Appellant*,

v.                                                            21-1410-cv

RELIANCE STANDARD LIFE INSURANCE COMPANY,

> *Defendant-Appellee*.

_____

| | |
|---|---|
| For Plaintiff-Appellant: | EVE-LYNN GISONNI, Gisonni Law Firm, P.C., White Plains, NY |
| For Defendant-Appellee: | JOSHUA BACHRACH, Wilson Elser Moskowitz Edelman & Dicker LLP, Philadelphia, PA |

Appeal from a judgment of the United States District Court for the Southern District of New York (Kimba M. Wood, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Frank Caccavo appeals from the judgment entered on May 19, 2021, in favor of Defendant-Appellee Reliance Standard Life Insurance Company on Caccavo's claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, challenging Reliance's reduction of his long-term disability benefits. We assume the parties' familiarity with the record.

We review the district court's decision to grant summary judgment *de novo*. *Arnone v. Aetna Life Ins. Co.*, 860 F.3d 97, 105 (2d Cir. 2017).

## I.    Standard of Review

Caccavo argues first that the district court erred by applying an arbitrary-and-capricious, rather than *de novo*, standard of review to Reliance's benefits decision. We generally review a plan administrator's benefits decision under an arbitrary-and-capricious standard where, as here, the plan grants the administrator discretionary authority to determine eligibility for benefits. *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 485 (2d Cir. 2013). However, "a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless." *Halo v. Yale Health Plan*, 819 F.3d 42, 58 (2d Cir. 2016). The plan bears the burden of establishing strict compliance with the regulation. *Id.*

Caccavo argues that Reliance is not entitled to arbitrary-and-capricious review because it violated two subsections of the regulation. First, Caccavo asserts that Reliance violated § 2560.503-1(g)(1)(ii), which requires that, in the notification of any adverse benefit determination, the plan "shall set forth, in a manner calculated to be understood by the claimant . . . [r]eference to the specific plan provisions on which the determination is based." Contrary to Caccavo's contention, Reliance fulfilled its duty to "reference" the specific plan provisions on which its determination was based. In its March 10, 2017, letter notifying Caccavo of its decision, Reliance quoted the Work Incentive Benefit provision, which references "Rehabilitative Employment" three times and, by its terms, applies only "[d]uring the first twelve (12) months of Rehabilitative Employment." Joint App'x at 60. The letter also states that Reliance was advised that Caccavo "returned to work in September 2016" and that "the present information appears to indicate he is performing his prior position in some capacity." *Id.* Reliance therefore fully complied with § 2560.503-1(g)(1)(ii).[1]

---

[1]    For the first time on appeal, Caccavo argues that Reliance failed to comply with § 2560.503-1(g)(1)(ii) by failing to reference the Rehabilitative Employment provision in its May 16, 2017, letter to Caccavo. "It is a well-established general rule that a court of appeals will not consider an issue raised for the first time on appeal." *Sacerdote v. New York Univ.*, 9 F.4th 95, 118 (2d Cir. 2021) (internal quotation marks omitted). In any event, we would reject this argument on the merits. Section 2560.503-1(g)(1)(ii) applies to a "notification of any adverse benefit determination." The May 16, 2017, letter was a follow-up to the March 10, 2017, letter.

Next, Caccavo argues that Reliance failed to comply with § 2560.503-1(h)(3)(ii). That provision entitles a claimant to a "full and fair review of a claim and adverse benefit determination," which requires a plan to "[p]rovide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual." 29 C.F.R. § 2560.503-1(h)(3), (h)(3)(ii). Caccavo argues that the Reliance employee assigned to handle his appeal, Richard Hellwig, deferred to the initial adverse benefit determination made by Reliance employee Kora Tucci. We agree with the district court's conclusion that Hellwig's detailed letter summarizing his review and ultimate decision to uphold the initial adverse benefits determination contains no indication of improper deference. The fact that Reliance's Appeals Supervisor stated in a September 12, 2017, email to Hellwig that Tucci would be able to give him the "scoop," Joint App'x at 1500, and that Hellwig and Tucci each independently sought a similar (although not identical) list of documents from Caccavo does not compel a different conclusion. We therefore hold that the district court correctly determined that Reliance had strictly complied with 29 C.F.R. § 2560.503–1 and was accordingly entitled to arbitrary-and-capricious review.

## II.    Addressing Reliance's Structural Conflict of Interest

A court reviewing an administrator's decision under an arbitrary-and-capricious standard must "remain cognizant of the conflict of interest that exists when the administrator has both the discretionary authority to determine eligibility for benefits and the obligation to pay benefits when due." *Miles*, 720 F.3d at 485 n.13. Reliance does not deny that it operates under such a conflict, typically referred to as a "*Glenn* conflict" after the Supreme Court's decision in *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). The "weight properly accorded a *Glenn* conflict varies in direct proportion to the likelihood that the conflict affected the benefits decision." *Miles*, 720 F.3d at 485 n.13 (internal quotation marks omitted). "Evidence that a conflict affected a decision may be categorical (such as 'a history of biased claims administration') or case specific (such as an administrator's deceptive or unreasonable conduct), and may have bearing also on whether a particular decision is arbitrary and capricious." *Durakovic v. Building Serv. 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir. 2010) (quoting *Glenn*, 554 U.S. at 117). However, "[n]o weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." *Id.*

Caccavo argues that the district court erred when it determined that there was no evidence that Reliance's conflict actually affected its denial of benefits and thus gave Reliance's conflict zero weight in its review. We agree. Caccavo offers "categorical" evidence suggesting that Reliance's conflict affected its decision in the form of a number of judicial decisions reviewing Reliance's benefits decisions and finding that Reliance had acted arbitrarily and capriciously, principally *Nichols v. Reliance Std. Life Ins. Co.*, No. 3:17-CV-42, 2018 WL 3213618, at *6–*7 (S.D. Miss. June 29. 2018), *rev'd, Nichols v. Reliance Std. Life Ins. Co.*, 924 F.3d 802 (5th Cir. 2019), in which the district court *sua sponte* surveyed judicial decisions involving Reliance over the preceding twenty-one years and noted "over 100 opinions . . . criticizing Reliance's disability decisions, including over 60 opinions reversing a decision as an abuse of discretion or as arbitrary and capricious." *Id*.

The district court rejected this evidence principally because the Court of Appeals had reversed the district court in *Nichols*. But the Court of Appeals's reversal was driven largely by

3

the fact that the district court had undertaken its review *sua sponte*, while Fifth Circuit precedent required the claimant to come forward with evidence that a plan's structural conflict affected its decision to justify more searching judicial review. *See Nichols*, 924 F.3d at 813–15. Here, Caccavo offered *Nichols* and other judicial decisions criticizing Reliance's conduct as categorical evidence that Reliance's conflict affected its decision. *See Durakovic*, 609 F.3d at 140. Accordingly, it was error for the district court to give zero weight to Reliance's conflict. Nevertheless, we agree with the district court that Caccavo's proffered case-specific evidence is unconvincing, as the record does not reflect that Reliance "committed acts of unreasonableness" or "act[ed] deceptively." Caccavo Br. at 63. We will therefore accord some weight to Reliance's conflict of interest in our review of its adverse benefits decision. *See Durakovic*, 609 F.3d at 139 ("The weight properly accorded a *Glenn* conflict varies in direct proportion to the 'likelihood that the conflict affected the benefits decision.'" (quoting *Glenn*, 554 U.S. at 117) (alterations adopted)).

## III.     Arbitrary and Capricious Review

Even according weight to Reliance's *Glenn* conflict in our review, we agree with the district court that Reliance's decision was not arbitrary and capricious. "A decision is arbitrary and capricious only if it is found to be without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miles*, 720 F.3d at 486 (internal quotation marks omitted). A court's review for substantial evidence under an arbitrary-and-capricious standard is "narrow," and a court is "not free to substitute [its] own judgment for that of the insurer as if [it] w[as] considering the issue of eligibility anew." *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83–84 (2d Cir. 2009) (internal quotation marks omitted) (alterations adopted). Caccavo argues that Reliance's decision was not supported by substantial evidence. "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." *Celardo v. GNY Auto. Dealers Health & Welf. Trust*, 318 F.3d 142, 146 (2d Cir. 2003) (internal quotation marks omitted) (alterations adopted).

Substantial evidence supports Reliance's decision. Caccavo informed Reliance in March 2016 that he intended to sign his former team's renewal contract with Cushman, which would enable him to continue receiving loyalty payments. In June 2016, Dr. Brett Prince, Caccavo's neuropsychologist, informed Cushman that Caccavo was able to return to work in a "minimal" way with limitations. Joint App'x at 1189. Specifically, Dr. Prince noted that it was unpredictable how Caccavo would handle "tasks, time management, executive functioning skills and deadlines" and it was unknown how many hours a week he could work. *Id.* On September 2, 2016, Andrew Judd, Managing Principal at Cushman, confirmed that Cushman would support Caccavo's limitations and stated that Cushman would welcome Caccavo back to work on September 6, 2016. On December 30, 2016, Cushman Benefits Assistant Sally Halfhide informed Reliance that Caccavo was back at work "with limitations" as of September 6, 2016. Joint App'x at 1528. In January 2017, another Cushman human resources employee provided Reliance with a job description for a "Broker or Salesperson" dated September 1, 2011 (prior to Caccavo's injury), and stated that this job description was "closest to [Caccavo's current] role." *Id.* at 1531-32. Based on this evidence, it was not unreasonable for Reliance to determine that there had been a change in Caccavo's employment status.

4

Caccavo submitted countervailing evidence on his administrative appeal of Reliance's adverse benefit decision. Specifically, Caccavo provided statements from himself; his wife and power-of-attorney, Laurie Caccavo; and Marcus Petrella, the head of Caccavo's former team at Cushman--each of whom stated that Caccavo had never returned to work.[2] Caccavo also provided statements from Judd and Kari Ortbals, Cushman's Vice President of Human Resources and Ms. Halfhide's supervisor, who stated that the human resources information provided in December 2016 and January 2017 was entered into Cushman's system in error and not based on Halfhide's personal knowledge of Caccavo's work status, and added that "Caccavo has not performed work for Cushman & Wakefield since his leave initiated." *Id.* at 1197–98, 1501–03. Finally, Caccavo also submitted a statement and treatment notes from Dr. Prince, who stated that recent testing "revealed continuing deficits in the areas of sustained attention, information processing speed, and neuromotor functioning in the dominant hand," and that Prince understood "[Caccavo] has not been capable of returning to work in any capacity" since his June 2016 letter. *Id.* at 903.

In light of the conflicts between the evidence provided on appeal and that received from Cushman prior to the initial decision, Reliance requested that Caccavo provide a copy of the team's renewal contract and pay statements relating to all income received from Cushman since the date of Caccavo's accident. Caccavo refused to provide these documents and revoked his prior authorization for Cushman to provide information directly to Reliance. Although Caccavo may have feared that Reliance would use these documents to claw back benefits paid to offset for earlier loyalty payments, the documents also could have shown whether Cushman characterized the payments Caccavo received between September and December 2016 in a way consistent with loyalty payments paid in earlier periods. Caccavo's refusal to provide this documentation impeded Reliance's efforts to more thoroughly investigate and reconcile the contradictory evidence before it, and provides substantial evidence for Reliance's decision to deny Caccavo's administrative appeal.[3]

The record undoubtedly reflects that Caccavo suffers from serious physical and cognitive limitations as a result of his 2013 car accident and that the prognosis for improvement of those limitations is poor. It further provides significant reason to believe Caccavo never returned to

---

[2]     The district court characterized Petrella's letter as "equivocal" because it stated that Caccavo was "not working in the traditional sense" and that Caccavo's former team "still wanted him to be part of the team and to be monetarily rewarded." Joint App'x at 898. The letter also stated that since Caccavo's injury, "he could no longer participate as a member of the team;" "[Caccavo] could not participate as a team member or put in time in contribution toward our team's efforts;" "while [Caccavo] may be sharing in commissions generated by the team, he is not performing the duties that our team members are;" and "[Caccavo's] role is equivalent to a business owner who collects a passive income." *Id.* Petrella also noted that Caccavo had visited the office twice since September 2016 for social purposes, and Petrella's phone conversations with Caccavo were social in nature. *Id.*

[3]     In this way, Reliance's conduct is unlike the arbitrary and capricious denial of benefits by the plan at issue in *McCauley*, to which Caccavo draws an analogy. In *McCauley*, the plan "seized upon" an earlier medical report that represented the plaintiff's symptoms as moderate while ignoring a later, more detailed medical report that "flatly" contradicted the plan's finding that the plaintiff was able to perform the ordinary duties of his occupation. 551 F.3d at 136. The plan told the plaintiff that it had rejected the health claims made in the second report because they "were acknowledged by [the plaintiff's] physician" in his initial report, whereas the record reflected that the plan had, in fact, dismissed the claims in the second report because the report was not signed by a physician. *Id.* at 135. This deception prevented the plaintiff from curing the defect and contributed to our conclusion that the plan's denial was arbitrary and capricious. *Id.* at 136-37. Here, by contrast, Reliance invited Caccavo to submit more information to clarify the record and resolve the contradictions therein, but Caccavo refused.

work at Cushman, and that the September "return to work" date was provided to Reliance in error. But ultimately, "the question for this court is not whether [the plan] made the 'correct' decision but whether [the plan] had a reasonable basis for the decision that it made." *Hobson*, 574 F.3d at 89 (internal quotation marks omitted) (alteration adopted). Reliance's decision to reduce Caccavo's benefits turned not on the extent of his physical and cognitive limitations, nor on any purported change in his condition, but on a perceived change in the nature of his continuing relationship with Cushman, based on information that, notwithstanding his condition, he had returned to work in a limited capacity.[4] Regardless of how we would weigh the conflicting submissions, we cannot say that Reliance's decision was unsupported by substantial evidence. We therefore hold that Reliance had a reasonable basis for its decision.

\*     \*     \*

We have considered Caccavo's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[4] For similar reasons, we are not persuaded by Caccavo's arguments concerning the vocational review conducted by Reliance's Manager of Vocational Services, Jody Barach. This case is different from one in which the insured claims to be unable to perform the ordinary duties of any occupation, while the plan suspects that he is capable of performing some work. In such a case, an assessment by a vocational expert will be key to the plan's decision to provide or withhold benefits, and the thoroughness and reasonableness of that assessment will be key to a court's subsequent evaluation of whether the plan's benefits decision was appropriate. Here, there is no real dispute over Caccavo's physical and cognitive limitations and the fact that he qualifies as Totally Disabled under his insurance policy. The crucial dispute is whether, notwithstanding those limitations, Caccavo has nonetheless returned to work in a limited capacity.